1

2

3                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   NANCY SIQUEIROS, AN       )   Case No. EDCV 13-01789-VAP
     INDIVIDUAL,               )   (DTBx)
12                             )
                   Plaintiff,  )   **ORDER GRANTING MOTION FOR**
13                             )   **SUMMARY JUDGMENT**
         v.                    )
14                             )   **[Motion filed on April 17,**
     FEDERAL NATIONAL          )   **2015 (Doc. No. 44)]**
15   MORTGAGE ASSOCIATION AS   )
     SUCCESSOR-IN-INTEREST TO  )
16   BANK OF AMERICA           )
     CORPORATION, etc., et     )
17   al.                       )
                               )
18                 Defendants. )
     _____)
19

20       This case addresses the limited question of whether

21   Defendants Federal National Mortgage Association and Bank

22   of America, N.A. (collectively, "BANA"), breached a

23   contractual duty owed to Plaintiff Nancy Siqueiros

24   ("Siqueiros") to: (1) give her notice that her loan was

25   in arrears and her property subject to sale or (2)

26   provide her with notice of the precise amount required to

27   cure the default prior to sale.  On April 17, 2015, BANA

28   filed a Motion for Summary Judgment ("MSJ").  (Doc. No.

44.)  The matter came before the Court for a hearing on May 18, 2015.  After consideration of the papers filed in support of, and in opposition to, the MSJ, the Court GRANTS the MSJ, and enters judgment in favor of BANA as to all of Siqueiros's claims.

# I. UNDISPUTED FACTS

To the extent certain facts, or conclusions, are not mentioned in this Order, the Court has not relied on them in reaching its decision.  In addition to considering the evidentiary objections raised by the parties, the Court has independently considered the admissibility of the evidence underlying BANA's Statement of Undisputed Facts and Siqueiros's Statement of Genuine Issues, and has not considered facts that are irrelevant or based upon inadmissible evidence.  The material facts described in I.B. below are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  See L.R. 56-3.

## A.   Evidentiary Objections

Before setting forth the uncontroverted facts in this action, the Court examines the admissibility of the evidence offered by both sides in support of, and opposition to, the MSJ.  "A trial court can only consider admissible evidence in ruling on a motion for summary

judgment." <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002).  At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial.  <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003); <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001).  Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment.  <u>Burch v. Regents of Univ. of California</u>, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

Siqueiros does not dispute any of the facts in BANA's Statement of Undisputed Facts.  (<u>See</u> Siqueiros's Statement of Genuine Issues ("SGI") (Doc. No. 54).)  As to Siqueiros's Statement of Genuine Disputes, BANA objects to all of those facts on hearsay, foundational, and relevance grounds.  (<u>See</u> BANA's Response to Siqueiros's SGI (Doc. No. 56); BANA's Objections to Siqueiros's SGI (Doc. No. 57).)

BANA's primary objection is that the statements in the SGI (and its single piece of accompanying evidence, Siqueiros's declaration) are not relevant to Siqueiros's

remaining claims.  In a previous Order, the Court
dismissed many of the claims in Siqueiros's Seconded
Amended Complaint ("SAC").  The only remaining claims are
for breach of contract and breach of the covenant of good
faith and fair dealing related to BANA's alleged failure
to provide Siqueiros with certain required notices and
its alleged refusal to provide her with a reinstatement
calculation.  (See Order Granting in Part and Denying in
Part Defendants' Motion to Dismiss ("Dismissal Order")
(Doc. No. 32) at 13-16.)

The Court SUSTAINS the objections to ¶¶ 2-10 of the
SGI.  Those statements relate to claims the Court has
already dismissed, and thus are not relevant to the
remaining claims in the case.  The Court OVERRULES the
objections to ¶¶ 1, 11-32 of the SGI.  Those statements
could be relevant to the remaining claims in this case,
as they deal with her request for, and non-receipt of,
the reinstatement calculation.

**B.   Facts**

**1.  Siqueiros's Purchase of the Property**

Siqueiros obtained a loan in the amount of $108,500
to finance property in Cathedral City, California on May
18, 2004.  (SUF ¶ 1.)  This was a rental property and was
not Siqueiros's primary residence; her mailing address,

1  *i.e.*, the correct address where all notices should be

2  sent, was in Torrance, California.  (SUF ¶¶ 9-10.)

3

4     **2.    The Deed of Trust**

5     The Deed of Trust ("DOT") that secured the Note

6  identifies Siqueiros as the borrower, Bank of America,

7  N.A. as the lender and beneficiary, and PRLAP, Inc., as

8  trustee.  (SUF ¶ 2.)  Siqueiros signed the Note and the

9  DOT.  (SUF ¶ 3.)  The DOT states that if Siqueiros

10  defaults on her mortgage payments, the lender, and its

11  successors and assigns, has the right to accelerate the

12  loan and invoke the power of sale.  (SUF ¶ 4.)

13

14     Specifically, Section 22 of the DOT states:

15

16     Lender shall give notice to Borrower prior to

17     acceleration following Borrower's breach of any

18     covenant or agreement in this Security

19     Instrument . . . . The notice shall specify: (a)

20     the default; (b) the action required to cure the

21     default; (c) a date, not less than 30 days from

22     the date the notice is given to Borrower, by

23     which the default must be cured; and (d) that

24     failure to cure the default on or before the

25     date specified in the notice may result in

26     acceleration of the sums secured by this

27     Security Instrument and sale of the Property.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(SUF ¶ 5.)   Section 22 further states:

>    If the lender invokes the power of sale, Lender
>    shall execute or cause Trustee to execute a
>    written notice of the occurrence of an event of
>    default and the Lender's election to cause the
>    Property to be sold.   Trustee shall cause this
>    notice to be recorded in each county in which
>    any part of the Property is located.   Lender or
>    Trustee shall mail copies of the notice by
>    Applicable law.

(SUF ¶ 6.)   Section 15 of the DOT also requires that

>    [a]ny notice to Borrower in connection with this
>    Security Instrument shall be deemed to have been
>    given to Borrower when mailed by first class
>    mail or when actually delivered to Borrower's
>    notice address if sent by other means.

(SUF ¶ 7.)   Section 19 provides that:

>    If Borrower meets certain conditions, Borrower
>    shall have the right to have enforcement of this
>    Security Instrument discontinued at any time
>    prior to the earliest of: (a) five days before
>    sale of the Property pursuant to any power of

1    sale contained in this Security Instrument; (b)

2    such other period as Applicable Law might

3    specify for the termination of Borrower's right

4    to reinstate; or (c) entry of a judgment

5    enforcing this Security Instrument.

6

7 (SUF ¶ 8.)

8

9        **3.   Siqueiros's Default and Foreclosure**

10       Due to financial difficulties, Siqueiros sought to

11 modify the terms of the loan securing the Torrance

12 property; in order to do this, she intentionally

13 defaulted on the loan securing the Cathedral City

14 property in 2008.  (SUF ¶ 12.)  She stopped making

15 payments altogether in 2010.  (SUF ¶¶ 13-14.)

16

17       On or about December 20, 2010, BANA mailed a Notice

18 of Intent to Accelerate, advising Siqueiros that the loan

19 on the Cathedral City property was in default and that

20 she had until January 19, 2011 to cure the default or

21 foreclosure proceedings would be initiated.  (SUF ¶ 15.)

22 This Notice was mailed to the Torrance address.  (SUF

23 ¶ 16.)  A further notice was mailed on February 28, 2011,

24 advising Siqueiros that no payment had been received and

25 the loan had been referred to the Foreclosure Review

26 Committee.  (SUF ¶ 18.)  Siqueiros received this letter

27

28

1  and understood that BANA had not received any payments on
2  the loan.  (SUF ¶ 19.)

4      On March 2, 2011, ReconTrust Company, N.A., which had
5  been duly substituted as trustee under the DOT, recorded
6  a Notice of Default due to the arrears owed on the loan
7  in the amount of $3,415.49.  (SUF ¶¶ 25-26.)  On March 9,
8  2011, the Notice of Default was mailed by registered or
9  certified mail and first class mail, with postage fully
10 prepaid to Siqueiros at the Torrance address.  (SUF
11 ¶ 28.)

13     A Notice of Trustee's Sale was recorded on June 13,
14 2011, noticing a sale for July 7, 2011.  (SUF ¶ 30.)  On
15 June 16, 2011, the Notice of Trustee's Sale was mailed by
16 registered or certified mail and first class mail, with
17 postage fully prepaid to Siqueiros at the Torrance
18 address.[1]  (SUF ¶ 31.)

20     In June 2011, Siqueiros requested a "reinstatement
21 calculation," in order to cure the default.  (SUF ¶ 32.)
22 Specifically, on June 28, 2011, Siqueiros called BANA and
23 told BANA's agent to fax the reinstatement calculation to
24 a telephone number ending in 1251.  (SUF ¶¶ 33, 35.)

---

[1]    BANA's SUF states that it mailed a Notice of
Default on that date, but the relevant exhibit shows that
the Notice of Trustee's Sale was the actual document
mailed.

BANA faxed the reinstatement calculation to that number on June 28, 2011. (SUF ¶ 34.)  Siqueiros did not remit payment to make current her payments on the loan.  (SUF ¶ 36.)  As a consequence, the Cathedral City property was sold at a public auction on July 7, 2011.  (SUF ¶ 37.)

## C.  Procedural History

Siqueiros initially filed this action on October 2, 2013.  The Court granted two motions brought by BANA to dismiss the Complaint with leave to amend.  (Doc. Nos. 18, 25.)  BANA also moved to have the SAC dismissed; the Court granted that motion in part and denied it in part. (Doc. No. 32.)  The Court held that, to the extent Siqueiros alleged that BANA breached the terms of the DOT when it failed to provide her with notice of the default or of the foreclosure, or that it failed to provide her with a reinstatement figure timely in breach of the DOT and the covenant of good faith and fair dealing, the SAC could not be dismissed for failure to state a claim.  As it related to any of her other claims, including her claims for fraud or negligence alleging that BANA induced her to default on her loan, the Court dismissed those claims without leave to amend.

BANA filed the MSJ on April 17, 2015.  (Doc. No. 44.) Along with the MSJ, BANA filed:

- • A Statement of Undisputed Facts (Doc. No. 49);
- • the Declaration of Shama Ali (Doc. No. 45);
- • the Declaration of Michael Gerst (Doc. No. 46);
- • the Declaration of Tabi Habib (Doc. No. 47);
- • the Declaration of Jamie Wells (Doc. No. 48);
- • Exhibits 1-18 (Doc. No. 50-51).

On April 24, 2015, Siqueiros filed her Opposition to the MSJ.[2] (Doc. No. 52). Along with her Opposition, Siqueiros filed:

- • A Statement of Genuine Issues ("SGI") (Doc. No. 52);
- • the Declaration of Nancy Siqueiros (Doc. No. 53).

On May 4, 2015, BANA filed its Reply. (Doc. No. 55.) Along with the Reply, BANA filed:

- • BANA's Response to Siqueiros's Statement of Genuine Issues (Doc. No. 56);

---

[2] The Opposition is three and a half pages long and contains virtually no legal substance or argument. Instead, it claims, without any analysis, that "[t]hese issues are in dispute and are sufficient to prove breach of contract and breach of the covenant of good faith and fair dealing, and support denying this Motion for Summary Judgment." (Opp'n at 3.)

• BANA's Objections to Evidence Submitted in Support of Siqueiros's Statement of Genuine Issues (Doc. No. 57).

## II. LEGAL STANDARD

A motion for summary judgment or summary adjudication shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the

non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.
Instead, the moving party's burden is met by pointing out
that there is an absence of evidence supporting the non-
moving party's case.  <u>Id.</u>

    The burden then shifts to the non-moving party to
show that there is a genuine issue of material fact that
must be resolved at trial.  Fed. R. Civ. P. 56(e);
<u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The
non-moving party must make an affirmative showing on all
matters placed in issue by the motion as to which it has
the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322;
<u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W.
Schwarzer, A. Wallace Tashima & James M. Wagstaffe,
<u>Federal Civil Procedure Before Trial</u> § 14:144.  "This
burden is not a light one.  The non-moving party must
show more than the mere existence of a scintilla of
evidence."  <u>In re Oracle Corp. Securities Litigation</u>, 627
F.3d 376, 387 (9th Cir. 2010) (citing <u>Anderson</u>, 477 U.S.
at 252).

    A genuine issue of material fact will exist "if the
evidence is such that a reasonable jury could return a
verdict for the non-moving party."  <u>Anderson</u>, 477 U.S. at
248.  In ruling on a motion for summary judgment, a court
construes the evidence in the light most favorable to the
non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135

1  (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec.

2  Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

3

4  **III. DISCUSSION**

5  As explained above, only two claims remain in this

6  action: (1) breach of contract based on BANA's alleged

7  failure to provide Siqueiros with notice of the default

8  or notice of the trustee's and failure to provide her

9  with the reinstatement amount in accordance with the

10  terms of the DOT, and (2) breach of the covenant of good

11  faith and fair dealing based on BANA's alleged failure to

12  provide her with the reinstatement amount.  (Dismissal

13  Order at 13-16.)  For the reasons explained below,

14  Siqueiros has pointed to no genuine dispute of material

15  fact to preclude a grant of summary judgment as to any of

16  those claims.  Accordingly, the Court finds that the

17  undisputed facts show that none of Siqueiros's claims

18  have merit.

19

20  **A.  Siqueiros's Breach of Contract Claims Fail**

21  "A cause of action for damages for breach of contract

22  is comprised of the following elements: (1) the contract,

23  (2) plaintiff's performance or excuse for nonperformance,

24  (3) defendant's breach, and (4) the resulting damages to

25  plaintiff." Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,

26  222 Cal. App. 3d 1371, 1388 (1990) (citing Reichert v.

27  General Ins. Co., 68 Cal. 2d 822, 830 (1968)).

28

**1.   BANA Did Not Breach the DOT by Failing to Mail
the Notice of Default**

With respect to Siqueiros's claim that BANA breached
the terms of the DOT by failing to mail her the Notice of
the Default, the undisputed evidence shows that she was,
in fact, mailed that notice.  As noted above, Section 22
of the DOT, which details the notice required to
accelerate the loan in case of default, states that

> notice to Borrower in connection with this
> Security Instrument shall be deemed to have been
> given to Borrower when mailed by first class
> mail or when actually delivered to Borrower's
> notice address if sent by other means.

(SUF ¶ 7.)  It is undisputed that the Notice of Default
was mailed to Siqueiros's Torrance address, in accordance
with the DOT.  (SUF ¶ 28.)  Thus, as it is undisputed
that BANA mailed Siqueiros the Notice of Default in
accordance with the terms of the DOT, Siqueiros cannot
prevail on her claim that BANA breached the DOT, and
Siqueiros fails to raise a triable issue of fact as to
this claim.  Accordingly, the Court enters judgment
against Siqueiros on this claim.

1         **2. BANA Did Not Breach the DOT by Failing to Mail**

2             **the Notice of Trustee's Sale**

3     After the Notice of Default was mailed to Siqueiros,

4 she did not cure the default. (SUF ¶ 17, 27.) Thus,

5 BANA was justified in exercising its power to sell the

6 property, pursuant to the DOT. It is also undisputed

7 that BANA mailed a copy of the Notice of Trustee's Sale

8 to Siqueiros's Torrance address, in accordance with the

9 DOT. (SUF ¶ 31.) Thus, as it is undisputed that BANA

10 mailed Siqueiros the Notice of Trustee's Sale in

11 accordance with the terms of the DOT, Siqueiros cannot

12 prevail on her claim that BANA breached the DOT, and

13 Siqueiros fails to raise a triable issue of fact as to

14 this claim. Accordingly, the Court enters judgment

15 against Siqueiros on this claim.

16

17         **3. BANA Did Not Breach the DOT by Failing to**

18            **Provide Siqueiros with a Reinstatement**

19            **Calculation**

20     Finally, it is undisputed that Siqueiros attempted to

21 contact BANA in June 2011 in order to reinstate her loan.

22 (SUF ¶ 32.) As noted above, Section 15 of the DOT

23 provides the borrower with the right to bring the loan

24 current, after paying a reinstatement amount, so long as

25 the borrower does so "at any time prior to the earliest

26 of: (a) five days before sale of the Property pursuant to

27 any power of sale contained in this Security Instrument;

28

(b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate . . . ." (SUF ¶ 8.)

BANA's business records indicate that on June 28, 2011, Siqueiros called and requested a reinstatement calculation.  (SUF ¶ 33.)  Siqueiros requested that BANA fax the reinstatement calculation to her telephone number ending in 1215.  (SUF ¶¶ 32-33.)  Siqueiros later confirmed that the telephone number ending in 1215 was indeed hers.  (SUF ¶ 35.)  BANA transmitted the reinstatement calculation to Siqueiros via facsimile to the telephone number ending in 1215 on June 28, 2011, at 10:35 a.m.  (SUF ¶ 34.)  Thus, it is undisputed that BANA sent Siqueiros a reinstatement calculation on June 28, 2011.  Though Siqueiros claims that her efax was broken at the time BANA faxed her the reinstatement calculation (see SGI ¶ 13), this does not change the undisputed fact that the reinstatement calculation was indeed sent.

According to Siqueiros, however, she contacted BANA on June 30, 2011, to request again that BANA provide her with a reinstatement figure faxed to a different telephone number; BANA apparently never sent this fax. (SGI ¶¶ 14-17.)  Even assuming this is true, however, BANA had no obligation to provide her a reinstatement calculation on that date.

17

First, as explained above, BANA already had sent Siqueiros a reinstatement calculation on June 28, 2011. More critically, under the DOT, BANA had no obligation to send her a reinstatement calculation on June 30, 2011 because she could no longer redeem the property by paying the arrears as of that date.

As explained by BANA in its Reply, the Trustee's Sale had been noticed for July 7, 2011.  (Reply at 5-8; SUF ¶ 30.)  The DOT allows a borrower to submit a payment to bring a loan current at the earliest of five days before the trustee's sale or any other such period as provided by law.  Here, California law does so provide. California Civil Code § 2924c(e) states that the right to reinstate exists "until five business days prior to the date of sale set forth in the initial recorded notice of sale."  Section 2924c(e) further reiterates  that "[a]ny right of reinstatement created by this section is terminated five business days prior to the date of sale" and that "[n]othing contained herein shall give rise to a right of reinstatement during the period of five business days prior to the date of sale."  Id.; Gonzalez v. Wells Fargo Bank, FSB, 2011 WL 1877219, at *2 (N.D. Cal. May 17, 2011) ("the statute clearly states that Gonzalez's right to reinstatement terminates five business days before the date of sale.").

As used in Section 2924c(e), the term "business day"
has the same meaning as specified in California Civil
Code § 9.  Section 9, in turn, states that business days
are every day other than Sundays and holidays as provided
by the California Government Code.  The California
Government Code states that July 4th is a holiday.  Cal.
Gov't Code § 6700(a)(8).

June 30, 2011 was a Thursday, less than five business
days before the Trustee's Sale on July 7, 2011.[3]  Even if
she wanted to, Siqueiros could not have exercised her
statutory right of reinstatement on that date; thus, BANA
could not have breached the terms of DOT by failing to
provide her with a reinstatement calculation that would
have been of no use to her.  To the extent Siqueiros
claims that BANA breached the terms of the DOT by failing
to provide her with reinstatement calculations on dates
after June 30, 2011, those claims similarly fail because
Siqueiros could not have exercised the option to pay the
reinstatement calculation at any point after June 30,
2011.

As BANA points out, to hold otherwise would lead to
absurd results, namely that Siqueiros "could wait until a
few days before the properly noticed foreclosure sale to

---

[3]     There were four: Friday July 1, 2010, Saturday
July 2, 2010, Tuesday July 5, and Wednesday July 6, 2010.

request a reinstatement figure and then bring a claim for breach of contract years later because BANA allegedly failed to get the reinstatement figure to her quick enough." (Reply at 8.) Such a result would be contrary to statute and the terms of the DOT.

Accordingly, the Court finds that the undisputed evidence shows that Siqueiros cannot prevail on her claim that BANA breached the DOT by failing to provide her with a reinstatement calculation and Siqueiros fails to raise a triable issue of fact as to this claim. Accordingly, the Court enters judgment against Siqueiros on this claim.

**B.   Siqueiros's Claim for Breach of the Covenant of Good Faith and Fair Dealing Also Fails**

The Court also allowed Siqueiros to proceed on her theory that BANA breached the covenant of good faith and fair dealing by refusing to provide her with a reinstatement figure. (Dismissal Order at 12-13.)

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Kransco v. American Empire Surplus Lines Ins. Co., 23 Cal. 4th 390 (2000) (quoting Comunale v. Traders & General Ins. Co.,

50 Cal. 2d 654, 658 (1958)).  "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in  conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  <u>Racine & Laramie, Ltd. v. Dep't of Parks & Recreation</u>, 11 Cal. App. 4th 1026, 1031-32 (1992) (quoting <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1153 (1990)).

   To state a claim for a breach of the covenant of good faith and fair dealing, the plaintiff must allege: "(1) the parties entered into a contract; (2) the plaintiff fulfilled [her] obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  <u>Rosenfeld v. JPMorgan Chase Bank, N.A.</u>, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citing Judicial Council Of California Civil Jury Instruction 325).

   In order for a breach of contract to be a breach of the covenant of good faith and fair dealing, there also must be "'something beyond breach of the contractual duty itself,' [such as] 'unfair dealing rather than mistaken

1  judgment . . . .'"  <u>Congleton v. Nat'l Union Fire Ins.</u>
2  <u>Co.</u>, 189 Cal. App. 3d 51, 59 (1987).

3

4      Here, as discussed above, there is no evidence that
5  BANA interfered in any way with Siqueiros's rights to
6  receive the benefits of the DOT.  The undisputed evidence
7  instead shows that BANA mailed Siqueiros the Notice of
8  Default, the Notice of Trustee's Sale, and faxed her a
9  reinstatement calculation on June 28, 2011, at her
10  request.  By the time Siqueiros made any subsequent
11  attempts to obtain a reinstatement calculation, her
12  contractual and statutory right to redeem had passed.[4]

13

14      Accordingly, the Court finds that the undisputed
15  evidence shows that Siqueiros cannot prevail on her claim
16  that BANA breached the implied covenant of good faith and
17  fair dealing by failing to provide her with a

18

19  _____

20      [4]   As pointed out by BANA in its Reply, many of the
assertions Siqueiros made in her declaration in
21  opposition to summary judgment contradict the allegations
in the SAC or are entirely new.  (Reply at 9-10.)  The
22  Court has not considered allegations that contradict the
SAC (<u>see</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>,
23  200 F.3d 1223, 1232 (9th Cir. 2000) (holding that a party
could not contradict allegations in an earlier pleading
24  in an effort to survive summary judgment), or allegations
that were not part of the SAC (<u>see</u> <u>Wasco Products, Inc.</u>
25  <u>v. Southwall Technologies, Inc.</u>, 435 F.3d 989, 992 (9th
Cir. 2006) ("[T]he necessary factual averments are
26  required with respect to each material element of the
underlying legal theory . . . .  Simply put, summary
27  judgment is not a procedural second chance to flesh out
inadequate pleadings." (citation omitted)).

28

reinstatement calculation.  Thus, the Court enters judgment against Siqueiros on this claim.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the MSJ in its entirety and enters judgment in favor of BANA as to all claims.


Dated: June 1, 2015

VIRGINIA A. PHILLIPS
United States District Judge